**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**DIANE SPARKS**                                                                                                                           **PLAINTIFF**

**VS.**                                                    **CAUSE NO.: 1:08CV216-SA-JAD**

**REGION VII MENTAL HEALTH–
MENTAL RETARDATION COMMISSION
also known as COMMUNITY COUNSELING SERVICES,
JACKIE EDWARDS, INDIVIDUALLY, AND DAVID
WINFIELD, INDIVIDUALLY**                                         **DEFENDANTS**

<u>MEMORANDUM OPINION</u>

Presently before the Court is Defendant Region VII-Mental Health–Mental Retardation Commission, a/k/a Community Counseling Services (CCS), and Jackie Edwards' Motion for Summary Judgment [55] and Defendant David Winfield's Motion for Summary Judgment [50]. The Court finds as follows:

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Diane Sparks was first employed by CCS[1] as an Outpatient Therapist in CCS's Clay County Office in 1998. Sparks left CCS temporarily in May 1999 and returned in 2002 as the Group Home Coordinator. Sparks was promoted to County Administrator over Oktibbeha County in February 2005. As County Administrator, Sparks was in charge of the overall operations of Oktibbeha County and supervised approximately sixty CCS employees. Sparks was under the direct supervision of Susan Baker, the Chief Operations Officer and the Clinical Director of CCS.

In June 2007, there was a contested Supervisor's election in Clay County, Mississippi, one

---

[1] CCS is a governmental mental health care provider that provides mental health services in seven counties in North Mississippi. CCS provides alcohol and drug treatment services, developmental disability services, employee assistance programs, mental health services and residential services.
    CCS is governed by a Board of Directors which is comprised of one person from each of the Counties in Region VII appointed by each County's Board of Supervisors.

of the counties in Region VII. Defendant David Winfield was the incumbent supervisor and was running for re-election against Floyd McKee. Around this time, Sparks' husband, Allen Sparks, allowed McKee to place a large political sign supporting his candidacy on Sparks' property. When Plaintiff Sparks saw the sign, she requested that her husband remove it. She testified that it was her understanding she was prohibited from publicly supporting a candidate in the election. McKee removed the sign shortly thereafter.

After the sign was removed, Plaintiff contends Jackie Edwards,[2] the Executive Director of CCS, inquired of Plaintiff's political support in the Clay County Supervisor's election. According to Sparks, Edwards came into Sparks' office, ordered an employee to leave the room, and shut Sparks' door. Edwards then told Sparks not to repeat anything they were about to discuss to anyone, including Sparks' husband. Edwards proceeded to inform Sparks that she received a phone call from David Winfield inquiring about the Sparks family's support in the upcoming election. Edwards related that Winfield wanted her to talk to Sparks about her family's political support. Sparks and Edwards discussed some of Winfield's purported merits as a candidate. Sparks explained she had heard rumors that Winfield had improperly used County funds. Edwards responded that the allegations were "public knowledge and that everybody knew about that and that was no big deal."

Edwards denies she ever encouraged Sparks to support Winfield during the conversation, and that she only mentioned his call to Sparks because she "thought it was amusing" Winfield considered Sparks to be so influential in the community. Sparks' affidavit indicates that "Edwards

---

[2] While the Board of Directors makes some policy decisions for Region VII, Edwards is the authority for day-to-day operations and certain personnel decisions.

made it plain to [her] that she wanted [her] to pledge support for David Winfield, the incumbent supervisor, rather than the challenger, Floyd McKee."

According to Sparks, she continued performing her duties as County Administrator after the conversation with Edwards without incident until August 22, 2007. Sparks received a five page memorandum from Susan Baker on August 22, 2007, outlining various deficiencies in Sparks' job performance. Baker testified that while no one event was determinative, taken together, they led Baker to lose confidence in Sparks' ability to function as County Administrator. The memorandum contained multiple instances where Sparks allegedly had been dishonest in matters and had provided incorrect information regarding employees under her supervision and other CCS personnel. The memorandum concluded:

> More seriously, it is my belief that your fault-finding goes beyond the facts as to both exaggeration and fabrication when necessary to accomplish the desired outcome. As a result, you are neither trusted by me nor many of your peers. I regret that this issue has to be discussed in such harsh and blatant terms but I need to communicate to you clearly that I do not have confidence in your ability to function as County Administrator in our agency. I am asking that you process this information contained in this memo and learn from it while deciding on the appropriate course of action for your career at this time.

Sparks called Baker the morning after she received the memorandum to discuss the issues raised therein. Sparks contends Baker told her she would not be coming back as a County Administrator but could take another non-administrative position in the agency. Baker, however, testified that she never told Sparks during the August 23 telephone conversation she could no longer continue as a County Administrator. Baker admits she allowed Sparks some time to think about the issues that had been discussed, but Baker denies allowing Sparks to miss work during that time period. Following their telephone conversation, Sparks composed and emailed Baker later that afternoon an eight-page response to Baker's job performance memorandum. Sparks expressed her

3

view of the issues raised and conveyed her belief that Baker's memorandum was motivated by Sparks' conversation she had with Jackie Edwards regarding Winfield's re-election campaign for Clay County Supervisor.

Sparks failed to come to work for three consecutive working days following her August 23 phone call with Baker. Sparks admits her absence from work was never discussed, and she did not make arrangements for anyone to cover her position those days. Pursuant to CCS's "no call, no show" policy[3], Baker contacted CCS's Human Resources Department on Wednesday, August 29, 2007, to submit a discharge letter to Sparks based upon her three consecutive absences.

Sparks made her first contact with CCS by calling Baker on Wednesday, August 29. By that time, CCS had discharged Sparks for her failure to show up to work and was in the process of sending out the discharge letter. Baker informed Sparks of this during their August 29 telephone conversation. The discharge letter drafted by Human Resources Administrator, Karen Phillips, and mailed to Sparks on August 29, provided the following:

> On Wednesday, August 22nd, you received a letter of supervision from your supervisor. While it did necessitate action on your part, it did not indicate that you had been placed on administrative leave or that there had been a recommendation for your termination. You contacted your supervisor the morning of Thursday, August 23rd and stated that you would be responding to the contents of the letter, but that you were undecided as to what you wanted your future role with the agency to be. As of this morning Wednesday, August 29th, you have made no contact with your office since Wednesday, August 22nd nor did you state to your supervisor that you would not be at the worksite. We are left to conclude that you have chosen to end your employment with the agency. Therefore, your employment is terminated effective this date.

Plaintiff filed the instant action against CCS, Jackie Edwards, and David Winfield. Sparks

---

[3] CCS Policy Number: HR 20-21 at page 2 provides in pertinent part as follows: "An employee who fails to report for work on three consecutive days without notice to his/her immediate supervisor will be discharged at the end of the third day of absence."

alleges CCS is liable to her for First Amendment retaliation. Sparks alleges that Edwards and Winfield separately are liable to her for the state law tort of maliciously interfering with her employment at CCS. Sparks' claims are that CCS retaliated against her for exercising her rights arising out of a conversation she had with Edwards during the 2007 Clay County Board of Supervisors election, and that Edwards' and Winfield's actions with regard to this conversation caused Sparks to be discharged from CCS.

Defendants have moved for summary judgment on all claims. CCS argues that Sparks was discharged because she failed to appear for work or contact CCS regarding her absence for three consecutive working days, not because of First Amendment retaliation. Further, CCS contends Sparks' claim fails because of the lack of any causal relationship between her protected activity in her June 2007 conversation with Edwards and her discharge on August 29, 2007. CCS alternatively argues that if the Court finds an issue of fact on causation, Sparks' First Amendment claim still fails as she would have been discharged in the absence of any protected activity because she violated CCS's attendance policy. Defendants further assert that because Sparks' employment relationship with CCS ended as a result of her own inactions, her malicious interference claim against Edwards and Winfield fails and requires dismissal as well.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(C). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury

5

to return a verdict for the non-moving party." Ginsberg 1983 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (internal citations omitted). The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." Morrison v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). But the nonmovant must "do more than simply show that there is metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Moreover, "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. Anderson, 477 U.S. at 252, 106 S. Ct. 2505. The nonmovant must instead come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(E).

## ANALYSIS

I.    Defendant CCS and Jackie Edwards' Motion for Summary Judgment

    A.    First Amendment Retaliation Against CCS

To prevail on a First Amendment retaliation claim, Sparks must show that: 1) she suffered an adverse employment action; 2) her speech involved a matter of public concern; 3) her interest in commenting on the matter outweighs her employer's interest in promoting efficiency; and 4) her

6

speech motivated the employer's adverse action. Harris v. Victoria Indep. Sch. Dist., 168 F.3d 216, 220 (5th Cir.), *cert. denied*, 528 U.S. 1022, 120 S. Ct. 533, 145 L. Ed. 2d 413 (1999). To prevail, Sparks must show that she engaged in protected conduct and that it was a motivating factor in her discharge. Beattie v. Madison County Sch. Dist., 254 F.3d 595, 601 (5th Cir. 2001). Then, the burden shifts to CCS to show by a preponderance of the evidence that they would have come to the same conclusion in the absence of the protected conduct. Id. (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977)).

CCS concedes that Sparks can establish the second and third elements required in proving her First Amendment retaliation claim–that her speech involved a matter of public concern and that her interest in commenting on the matters outweighs her employer's interest in promoting efficiency. CCS asserts that the elements at issue are whether Sparks suffered an adverse employment action and whether her political affiliation/speech motivated the adverse employment action.

"Adverse employment actions include discharges, demotions, refusals to hire, refusals to promote, and reprimands." Southard v. Texas Bd. of Criminal Justice, 114 F.3d 539, 555 (5th Cir. 1997)(citing Harrington v. Harris, 108 F.3d 598, 603 (5th Cir. 1997)). CCS contends Sparks' separation from CCS was not an adverse employment action as Sparks voluntarily ended her employment by failing to show up to work three consecutive days. Sparks, however, argues that she was terminated as County Administrator by Baker on August 23, 2007, and that was why she did not show up to work. Sparks asserts that Baker told her she was no longer County Administrator and that she could reapply for other non-administrative positions. Baker denies this assertion.

At this stage in the proceeding, the Court must accept as true Sparks' version of events. Sparks testified that she was terminated as County Administrator on August 23, 2007. Therefore,

7

the Court concludes the timing of Sparks' termination constitutes a genuine issue of fact for the jury to decide.

The final element is one of causation: if the decision-maker who imposed the adverse employment action was not motivated by the speech, then the speech did not cause the adverse employment action. Johnson v. Louisiana, 369 F.3d 826, 830 (5th Cir. 2004) (citing Beattie, 254 F.3d at 631. A plaintiff pursuing a First Amendment retaliation claim may rely upon "a chronology of events from which retaliation may plausibly be inferred." Brady v. Houston Indep. Sch. Dist., 113 F.3d 1419, 1424 (5th Cir. 1997). Accepting that Sparks was terminated as County Administrator on August 23, 2007, before any unexplained absences from work, the Court finds CCS had no legitimate reason for Sparks' discharge on this date. Baker and Edwards both testified that the performance deficiencies outlined in the memorandum were not grounds for termination. Further, the close temporal proximity between Sparks' speech and her termination supports causation. Sparks' political speech occurred sometime in June 2007, and she was terminated about two months later in August 2007.

Prior to Sparks' speech, she had no disciplinary history. According to Baker's performance evaluation of Sparks, she was developing into an excellent County Administrator as of March 2007. Moreover, at the time of Sparks' termination, Baker and Edwards both were aware of the political sign supporting candidate McKee on Sparks' property. Lastly, if Sparks indeed was terminated by Baker on August 23, 2007, then the August 29, 2007, termination letter due to absences would be pretextual and thus raise an inference of causation. The Court finds that are genuine issues of material fact as to whether Sparks' speech was the cause of her termination.

Once an employee has met his burden of showing that his protected conduct was a

substantial or motivating factor in the adverse employment action, the burden shifts to the employer to show that it would have taken the same adverse action even in the absence of the speech. Charles v. Grief, 522 F.3d 508, 516 n.28 (5th Cir. 2008) (citing Mt. Healthy, 429 U.S. at 287, 97 S. Ct. 568). If the employer makes this showing "then the protected conduct in question does not amount to a constitutional violation justifying remedial action." Id.

CCS argues that it would have discharged Sparks whether or not the conversation between Sparks and Edwards ever occurred. CCS contends Sparks failed to report to work for three consecutive days in violation of CCS's "no call, no show" policy. If Sparks indeed was terminated for absences on August 29, 2007, then the protected conduct in question would not amount to a constitutional violation as CCS would have taken the same action in the absence of the speech. This, however, is a question for the jury. This Court must accept Sparks' contention that she was terminated on August 23, 2007, and this reason alone was why Sparks failed to show up to work for three days.

The Court finds there are genuine issues of material fact as to Plaintiff's First Amendment retaliation claim which precludes summary judgment. Therefore, Defendant CCS's Motion for Summary as to Plaintiff's First Amendment retaliation claim is DENIED.

B.  Malicious Interference Against Jackie Edwards

Sparks has sued Jackie Edwards for malicious interference with her employment alleging that she caused or contributed to her discharge from CCS for her refusal to voice support of Winfield and because of her support of Winfield's opponent.

A claim for malicious interference with employment is the same as asserting a tortious interference with contractual relations claim. See Roberson v. Winston County, Miss., No.

9

1:00CV415, 2002 WL 449667 (N.D. Miss. 2002). "To sustain a claim for tortious interference with contract, the plaintiff[] must establish that an enforceable contract existed, and that the contract would have been performed, but for the interference of the defendant[]." Ward v. Life Investors Ins. Co., 383 F. Supp. 2d 882, 888 (S.D. Miss. 2005) (citing Par Indus. v. Target Container, Co. 708 So. 2d 44, 48 (Miss. 1998)). The common elements that the plaintiff must plead and prove to establish tortious interference with contract are as follows: "(1) That the acts were intentional and willful; (2) That they were calculated to cause damage to the plaintiff[] in [her] lawful business; (3) That they were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual damage and loss resulted." Id. at 888 (citing Par Indus., 708 So. 2d at 48). However, "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." Morrison v. Miss. Enter. For Tech., 798 So. 2d 567, 574 (Miss. Ct. App. 2001) (quoting Shaw v. Burchfield, 481 So. 2d 247, 255 (Miss. 1985)).

Sparks contends that a jury could find Edwards caused Sparks to be fired because of the sign on her property and the conversation in Sparks' office in June 2007. The Court disagrees. The evidence before this Court is that Winfield claimed to be "very close" to Edwards. Further, Winfield and Edwards spoke about Sparks' political support, and then Edwards allegedly "confronted" Sparks after talking to Winfield. Although Edwards admits she spoke with Sparks' supervisor Baker about the conversation between her and Sparks, there is no evidence Edwards said or did anything to adversely affect Sparks' employment at CCS. Because Sparks failed to show Edwards maliciously interfered with her employment, her tortious interference with contract claim fails. Therefore,

Defendant Jackie Edwards' Motion for Summary Judgment as to Plaintiff's malicious interference claim is GRANTED.

II. Defendant David Winfield's Motion for Summary Judgment [50]

Sparks also has sued David Winfield for malicious interference with her employment alleging that he caused or contributed to her discharge from CCS because of her refusal to voice support of Winfield and because of her support of Winfield's opponent. Further, Sparks has alleged that Winfield's interference with her job is a pattern of behavior by him which justifies the imposition of punitive damages.

Reviewing the record, there is no evidence to suggest that Winfield tortiously interfered with Sparks' employment. According to Edwards' and Sparks' deposition testimony, Winfield called Edwards and asked her to find out who Sparks and her husband were supporting in the election. Sometime prior to the 2007 Supervisor's election, Winfield visited Sparks' husband in an attempt to gain his vote. Winfield told Sparks that he was the better man for the job, and he did not feel Floyd McKee was suited for the job. Winfield inquired as to where Diane Sparks worked. When Sparks told Winfield that she worked for CCS, Winfield said that he knew Jackie Edwards very well, and that he and Jackie had worked on various projects together.

In order to prevail against Winfield, Sparks has to prove that Winfield acted willfully and intentionally to have Sparks terminated from CCS. " Ward, 383 F. Supp. 2d at 888 (citing Par Indus., 708 So. 2d at 48). There is no evidence before the Court to show that Winfield said or did anything to affect Sparks' employment at CCS. Because Sparks failed to show that Winfield maliciously interfered with her employment, her tortious interference with contract claim fails. Accordingly, David Winfield's Motion for Summary Judgment is GRANTED.

## IV. CONCLUSION

Based on the foregoing analysis, Defendant Region VII-Mental Health–Mental Retardation Commission, a/k/a Community Counseling Services (CCS), and Jackie Edwards' Motion for Summary Judgment [55] is DENIED as to Plaintiff's First Amendment retaliation claim and GRANTED as to Plaintiff's malicious interference claim against Jackie Edwards. David Winfield's Motion for Summary Judgment [50] is GRANTED.

A separate order in accordance with this opinion shall issue this day.

SO ORDERED, this the 27th day of October, 2009.

                                        **/s/ Sharion Aycock**
                                        **UNITED STATES DISTRICT JUDGE**